IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EDDIE BARTIE, | § | |
| TDCJ-CID No. 1022319, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-245-BR |
| | § | |
| HOWARD RELFORD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court are Defendants' Motions to Dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(1) and (6) (the "Motions"). (ECF 61, 74). For the reasons stated below, the Magistrate Judge recommends that the Motions be GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[1]

Plaintiff Eddie Bartie ("Bartie") is a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas. In September 2016, he was diagnosed as having cardiovascular disease and hypertension, so a doctor placed him on a special diet for cardiovascular health. Because the TDCJ does not serve his specific diet, Bartie instead was authorized to receive the TDCJ's "diet for health" (the "DFH"). From the time Bartie arrived at the Clements Unit in July 2021, Defendant Fernando Martinez ("Martinez"), the Clements Unit kitchen supervisor, has failed to provide him with the DFH because, Bartie claims, he is housed in a segregated building. As a result, Bartie receives food such as processed meats and salted foods, which are contrary to

---

[1]These background facts are taken from Plaintiff's Third Amended Complaint (ECF 39) and are assumed to be true for the purpose of evaluating the merits of Defendants' Motions.

the DFH. He also claims that Martinez does not provide the DFH's prescribed number of fruit, vegetable and milk servings. He alleges that Defendant Adam Gonzalez ("Gonzalez") "is personally involved with" denying inmates their medically prescribed diets, and that Defendant David Driskell ("Driskell"), in his official capacity, has failed to train Martinez in proper food service management duties.[2] Bartie further alleges that he is being deprived of sleep because the television is on in the dayroom, even when no one is watching it, and because officers will deliver mail at all hours, including in between 11 p.m. and 1 a.m.

Bartie filed this lawsuit on September 4, 2020, in the Southern District of Texas, alleging complaints about his treatment while housed at the Cotulla Unit. (ECF 1). After he was transferred to the Clements Unit, he sought and received permission to amend his complaint, which he did on November 11, 2021. (ECF 19). His amended complaint raised allegations arising from his time at Clements, so the Southern District transferred the case to this district on December 6, 2021. (ECF 23). Bartie filed a second amended complaint on October 11, 2022, that added Relford and further expanded his claims. (ECF 34).

On October 6, 2023, the Court issued an Order to Replead, pointing out the deficiencies in Bartie's operative complaint and providing him with the law applicable to his claims. Specifically, the Court addressed Bartie's claims of sleep deprivation, deliberate indifference, supervisory liability, and the need to allege personal involvement on the part of each defendant. Bartie was ordered to replead in conformity with the provided law. (ECF 38).

In response to the Court's Order to Replead, Bartie submitted his Third Amended Complaint (the "Complaint") on November 13, 2023. (ECF 39). Defendants Gonzalez and

---

[2]Bartie originally named Howard Relford ("Relford") as a Defendant, but Relford no longer serves as the director of TDCJ's laundry, food and supply department. As a result, David Driskell, the current director, has been substituted for Relford in his official capacity only.

Martinez filed their Motion on June 21, 2024, and Defendant Driskell filed his Motion on August 19, 2024. Defendants ask the Court to dismiss Bartie's claims pursuant to FED. R. CIV. P. 12(b)(1) and (6). Bartie responded to the Motion filed by Gonzalez and Martinez, disputing Defendants' allegations. (ECF 65).

## II.  RULE 12(B)(1) MOTIONS TO DISMISS

Defendants first ask the Court to dismiss Bartie's Complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).

### A.    Legal Standard.

A court may dismiss a complaint for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998); FED. R. CIV. P. 12(b)(1). The party invoking the Court's jurisdiction bears the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id*. The Court must first address subject matter jurisdiction because, without it, the case can proceed no further. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *Ramming*, 281 F.3d at 161.

### B.    Legal Analysis.

Defendants ask the Court to dismiss Bartie's claims under Rule 12(b)(1) because, they allege, Bartie lacks standing. "To prove standing, [p]laintiffs must establish injury-in-fact, causation, and redressability." *Crane v. Napolitano*, 920 F. Supp. 2d 724, 732 (N.D. Tex. 2013), *citing Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009). Standing is an essential component of subject matter jurisdiction that the plaintiff bears the burden of establishing. *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). If a party lacks Article III standing to pursue his claims, a federal court lacks subject matter jurisdiction to adjudicate them. *See Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024), citing *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022).

To establish standing, a plaintiff must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As the *Clapper* court noted:

> Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending. … Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.

*Id*. (internal citation omitted). Defendants allege that Bartie has failed to allege a concrete or particularized injury regarding DFH meals, in that he "does not allege the DFH meals have, in any way, caused him to become sick, lose weight, go hungry or are the direct cause of another form of injury." Defendants further allege that Bartie has not alleged that he suffered physical injury or illness in connection with any of his claims. (ECF 61 at 3, 74 at 3).

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation omitted). At this stage, Bartie has sufficiently claimed imminent injury to show standing for the purposes of the Motions. As the Fifth Circuit explained in evaluating an inmate's Eighth Amendment claim seeking injunctive relief, "[i]t is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions," regardless of whether those conditions actually cause injury. *Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024), quoting *Helling v. McKinney*, 509

4

U.S. 25, 33 (1993). "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.* Thus, "inmates need not show that death or serious injury has already occurred" to show that unconstitutional prison conditions exist. *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015). Instead, they "need only show that there is a substantial risk of serious harm." *Id.* (internal quotation and citations omitted).

Although *Ball* and *Helling* do not specifically address standing, their argument is equally applicable here. If a plaintiff can state a claim under *Ball* and *Helling* before actual harm has occurred, the plaintiff can state standing for Rule 12(b)(1) purposes before actual harm has occurred when seeking an injunction to prevent the harm. As the *Lujan* court noted, however, "mere allegations" will not suffice for the duration of a lawsuit: "[i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts…. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial." *Lujan*, 504 U.S. at 561 (internal quotations and citations omitted).

Bartie alleges that he was diagnosed with hypertension and cardiovascular disease and was placed on a low-fat diet by his doctor. (ECF 39 at 4, 6). Instead of receiving a low-fat diet, he receives food filled with fat and salt. (*Id*. at 6-8). Construing Bartie's complaint broadly in deference to his *pro se* status, he alleges that the high-fat diet places him at increased risk of heart disease, cancer and hypertension. He further alleges that Martinez is intentionally interfering with his medically ordered diet. (*Id*. at 6, 9). For the purposes of the Motions, Bartie has sufficiently alleged a substantial risk of serious harm such that he has standing to bring his claims. *See Helling*, 509 U.S. at 34-35 (inmate states an Eighth Amendment claim based on long-term exposure to

secondhand smoke "even though the effects of such exposure might not be manifested for some time."). Therefore, the Motions to Dismiss pursuant to Rule 12(b)(1) should be denied.

### III. RULE 12(B)(6) MOTIONS TO DISMISS

Defendants next ask the Court to dismiss Bartie's Complaint due to failure to state a claim for which relief may be granted, pursuant to FED. R. CIV. P. 12(b)(6).

#### A.    Rule 12(b)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not establish facial plausibility. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). The Court also is mindful it "must construe the pleadings of *pro se* litigants liberally … to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court ... create causes

of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

**B.      Legal Analysis.**

Bartie alleges that Defendants are failing to provide him a proper DFH and are depriving him of sleep. The Eighth Amendment prohibits "cruel and unusual punishments," U.S. CONST. AMEND. VIII, and "[t]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). To amount to cruel and unusual punishment, prison conditions "must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball*, 792 F.3d at 592 (quoting *Helling*, 509 U.S. at 33–35.

As noted by the *Ball* court, only deliberate indifference--"an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind"--constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

**1.      Failure to Provide DFH.**

Bartie first alleges that Defendants' refusal to provide the DFH violates the Eighth

Amendment.

A prison official cannot be held liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. "But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (same).

As to Defendant Martinez, there is no allegation that he was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. As the kitchen supervisor, he should be aware that an alleged failure to provide the DFH to inmates with health problems could create a risk to their health. However, Bartie has alleged no facts showing that Martinez: (1) knew that Bartie was prescribed the DFH; (2) did, in fact, perceive a risk to Bartie's health due to not receiving the DFH; or (3) intentionally disregarded the risk to Bartie's health incurred by Martinez's alleged intentional failure to provide the DFH to him. To state a claim sufficient to withstand a Rule 12(b)(6) motion, Bartie must allege facts which show that Martinez provided him with food that endangers his health and was acting with deliberate indifference. *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). He further must allege that Martinez knew of his condition and disregarded it. *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). Bartie's generalized complaint about Martinez's failure to provide the DFH, without more, is insufficient to state a viable claim.

As to Defendant Gonzalez, Bartie alleges only that Gonzalez "is personally involved with denying offenders their medically pr[e]scribed diets" (ECF 39 at 4) and that he "failed to establish

procedures to ensure medical diets." (*Id*. at 3). However, the conclusory allegation that Gonzalez is "personally involved," without any factual support whatsoever, is insufficient to state a claim against Gonzalez for failing to provide the DFH to Bartie. Assuming, *arguendo*, that it was Gonzalez's duty to establish procedures to "ensure medical diets," and that Gonzalez failed to do so, such failure does not state a claim cognizable under Section 1983. The question of "[w]hether or not to promulgate certain regulations concerning … Prison procedures or discipline is a matter within the discretion of defendant … as administrator of the prison. The courts have long recognized that the administration of prisons and the maintenance of discipline therein are executive functions with which the courts are loathe to interfere." *LeBlanc v. Foti*, 487 F. Supp. 272 (E.D. La. 1980), *citing Starrti v. Beto*, 405 F.2d 858 (5th Cir. 1969), *cert. denied*, 395 U.S. 929 (1969). Bartie has failed to state a claim against Gonzalez in that he has failed to allege facts showing Gonzalez's personal involvement in any of the purported constitutional violations alleged.

      **2.**     **Sleep Deprivation.**

Bartie complains that he has been deprived of sleep for an unspecified amount of time because mail is often delivered from 11 p.m. to 1 a.m., and the dayroom television is left on, regardless of whether someone is watching it. The Fifth Circuit has held that sleep deprivation can constitute a viable Eighth Amendment claim because sleep is one of life's basic necessities. *Garrett v. Thaler*, 560 F. App'x 375, 378 (5th Cir. 2014); *see also Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (explaining that sleep constitutes one of life's basic necessities and, therefore, "conditions designed to prevent sleep, then, might violate the Eighth Amendment."). Unlike the facts presented in *Garrett*, however, Bartie has not identified conditions, either by duration or by function, "designed" to prevent sleep. Moreover, Bartie has not identified any

"unreasonable risk of serious damage to his future health" by his alleged sleep deprivation. *Helling*, 509 U.S. at 35. Unlike his DFH claim, which alleges that his pre-existing health conditions are affected by the high-salt and high-fat diet, Bartie does not claim that the lack of sleep is affecting his health. At best, he alleges only a discomfort associated with incarceration, which does not rise to the level of an Eighth Amendment violation. *See Hyder v. Perez*, 85 F.3d 624 (5th Cir. 1996) (per curiam).

In addition, Bartie does not allege any direct facts that connect his inability to sleep with the actions or inactions of any individual defendant. "Personal involvement is an essential element of demonstrating liability under § 1983." *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (citations omitted). A plaintiff must "specify the personal involvement of each defendant ... [and] cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Bartie simply refers to the alleged constitutional violation, without linking it to any of the Defendants. He did not plead any facts related to any of the Defendants' role in his alleged sleep deprivation.[3] Therefore, Bartie's Eighth Amendment claim based on sleep deprivation should be dismissed.

### 3. Supervisory Liability Claim Against Driskell.

Bartie alleges that Driskell is liable as a supervisor for the actions of Martinez. Under Section 1983, however, supervisors are not liable for the actions of others, including their subordinates. *See Ashcroft*, 556 U.S. at 677 (2009). Instead, only the direct acts or omissions of the supervisor will support a claim for individual liability under Section 1983. *See Monell v. Dep't*

---

[3]Previous versions of Bartie's Complaint allege that he is discriminated against because he is classified as a heat-sensitive prisoner. Such claim, to the extent it remains after Bartie omitted it from his Third Amended Complaint, would fail for the same reasons as his sleep deprivation claim: that he has failed to connect his claims to the improper actions of any of the Defendants.

*of Social Servs.*, 436 U.S. 658, 692 (1978); *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff bringing a Section 1983 action must "specify the personal involvement of each defendant"). A supervisor may be held liable under Section 1983 only when (1) the supervisor was personally involved in the constitutional deprivation, (2) there is a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor implemented a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018); *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

To the extent that Bartie sues Driskell in his capacity as a supervisor, Bartie fails to state a claim. Bartie's Complaint alleges no facts establishing that Driskell (or his predecessor) was involved in the alleged failure to provide the DFH to Bartie. Bartie does not allege that Driskell is involved in any decision to withhold the DFH from Bartie, nor does Bartie allege that Driskell implemented a specific unconstitutional policy that resulted in an injury (or the imminent danger of injury) to Bartie.

To maintain a failure to train or supervise claim, a plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Bartie does not allege facts showing that (1) Driskell (or his predecessor) had a duty to train or supervise Martinez; (2) that any such failure to train violated Bartie's rights; or (3) Driskell's failure to train was a result of deliberate indifference

11

under the standards set forth above.

Bartie has failed to state a claim upon which relief can be granted against Driskell. As a result, the Motion should be granted as to Bartie's supervisory liability and failure to train claims against Driskell.

**C.     Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff already has pleaded his best case. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). As noted above, the Court already has provided Bartie with the law applicable to his causes of action and pointed out the deficiencies in his Second Amended Complaint. (ECF 38). Bartie was given an opportunity to re-plead and correct the deficiencies using the provided legal standards; however, as set forth above, his Third Amended Complaint (ECF 39) again has failed to state claims upon which relief may be granted. Therefore, the Court can only conclude that Bartie has pleaded his best case. As such, he should not be granted leave to amend yet again.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6) be GRANTED in part and denied in part. Specifically, the Rule 12(b)(1) Motion should be denied, and the Rule 12(b)(6) Motion should be granted and all of Bartie's claims should be dismissed with prejudice.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 16, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).